[660 NYS2d 19]

In the Matter of NATHAN C. NASSER (Admitted as NATHAN CHARLES NASSER), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 10, 1997

### APPEARANCES OF COUNSEL

*Richard M. Maltz* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Jon H. Hammer* for respondent.

### OPINION OF THE COURT

Per Curiam.

The respondent, Nathan C. Nasser, was admitted to the

practice of law in the State of New York by the First Judicial Department on July 7, 1980, under the name Nathan Charles Nasser. Until 1982, he practiced law in the State of New York. Beginning in January 1982, and at all relevant times, the respondent practiced law in the State of Connecticut.

On April 6, 1994, Mr. Nasser pleaded guilty in the United States District Court for the District of Connecticut to one count of making false statements (in connection with a loan) in violation of 18 USC § 1014. On November 22, 1995, he was sentenced to a term of three years' probation, to include two months of home confinement, and 200 hours of community service. He was also ordered to pay $10,800 in restitution and a special assessment of $50. By order entered June 11, 1996 (222 AD2d 33), this Court found the offense of which the respondent had been convicted to be a serious crime. We suspended him from the practice of law and directed him to show cause why a final order of censure, suspension or disbarment should not be made. We ordered that the Departmental Disciplinary Committee hold a hearing and issue a report and recommendation.

A hearing was held before a Panel of the Departmental Disciplinary Committee, at which the respondent admitted his conviction, admitted that it was a serious crime, and testified about the underlying facts and circumstances. He accepted full responsibility for his actions and the Panel found that he demonstrated genuine remorse.

The false statement which constituted the criminal act was contained in a United States Department of Housing and Urban Development settlement statement, form HUD-1. This form required the listing of various items in connection with the settlement of a mortgage loan, including any deposit given by a borrower to a seller, cash from the borrower at settlement, cash to the seller at settlement, settlement charges paid from a borrower's funds at settlement, and settlement charges paid from a seller's funds at settlement. In a transaction that forms the basis of the plea, the information supplied on the HUD-1 form, which had been filled out by a paralegal and certified by the respondent, was incorrect in most of the major categories. The "sale" transaction was essentially illusory and created to permit refinancing of existing mortgages for a home owner who had equity in property, but was unable to refinance the debt through conventional sources. Swiss Conservative Group, an entity which arranged such refinancing for home owners under the guise of a sale to a family member, was a cli-

ent of the respondent's law firm. The firm represented Swiss Conservative Group in approximately 45 such transactions. The respondent served as closing attorney in approximately five to seven of them.

The Hearing Panel has recommended that the respondent be suspended from the practice of law in the State of New York for a period of six months, retroactive to the date of his interim suspension. In reaching that conclusion, the Hearing Panel considered the respondent's earnest remorse, his cooperation with law enforcement authorities in other criminal proceedings related to similar transactions, the fact "that there was scant evidence presented suggesting that the lending institutions had suffered as a result of the misrepresentations", the fact that "there has been no suggestion that Mr. Nasser has engaged in any other ethical transgressions", and "the obvious toll this affair has taken on him personally".

The Hearing Panel and the Court are both mindful of the principle that the State where an attorney lived and practiced at the time of the offense has the greatest interest in the disciplinary issues and public policy considerations in any disciplinary proceeding (*see, Matter of Bosies*, 217 AD2d 358, 362; *Matter of Jagiela*, 217 AD2d 104, 108); and that great weight is to be afforded the sanction issued by the foreign jurisdiction. The respondent lived and practiced law in the State of Connecticut. The transaction that formed the basis of the respondent's conviction took place in Connecticut. It is appropriate to give weight to the six-month sanction imposed upon the respondent by the State of Connecticut. That suspension was completed on December 1, 1996. The respondent has been on interim suspension in the State of New York since June 11, 1996.

Accordingly, the findings of fact and conclusions of law provided in a report of a Hearing Panel of the Departmental Disciplinary Committee should be confirmed and the respondent should be suspended from the practice of law for a period of six months, retroactive to the date of his interim suspension. Since respondent has completed his suspension, we reinstate him to the practice of law without any further proceedings.

ROSENBERGER, J. P., WALLACH, RUBIN, WILLIAMS and MAZZARELLI, JJ., concur.

Motion granted, the Hearing Panel's recommendation confirmed, respondent suspended from practice as an attorney and counselor-at-law in the State of New York for a period a

six months, retroactive to June 11, 1996, and reinstated nunc pro tunc to July 3, 1997. The unpublished order of this Court entered on July 3, 1997 is recalled and vacated.