[702 NYS2d 234]

In the Matter of WILLIAM A. GOGEL (Admitted as WILLIAM ALAN GOGEL), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 21, 1999

**APPEARANCES OF COUNSEL**

*Richard M. Maltz* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Richard E. Mischel* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, was admitted to the practice of law in New York by the Second Judicial Department on March 13, 1968, as William Alan Gogel. At all times relevant herein, respondent has maintained an office for the practice of law within the First Judicial Department.

On January 22, 1997, respondent and his law partner, Barry W. Agulnick (*see, Matter of Agulnick,* 263 AD2d 239 [decided herewith]), pleaded guilty in the United States District Court for the Southern District of New York to conspiring to evade payment of taxes by union officials and structuring currency transactions, in violation of 18 USC § 371, which is a felony under the United States Code.

By an order and decision entered October 16, 1997, this Court granted the petition of the Department Disciplinary Committee and determined that the crime of which respondent has been convicted is a serious crime as defined by Judiciary Law § 90 (4) (d); suspended him from the practice of law pursuant to Judiciary Law § 90 (4) (f); and, directed him to show cause before the Departmental Disciplinary Committee why a final order of censure, suspension or disbarment should not be made (235 AD2d 33).

After a hearing on February 2, 1999, the Referee, in a report and recommendation dated April 15, 1999, recommended that this Court impose a two-year suspension on respondent.

On June 3, 1999, a Hearing Panel heard oral argument and, in its determination dated June 21, 1999, confirmed the Referee's report and recommended that respondent's suspension should be imposed retroactive to the date of his interim suspension. The Panel also recommended that since respondent would be eligible for reinstatement in December of this year, he should be automatically reinstated in the interest of judicial economy.

The Committee now moves for an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2) confirming the determination of the Hearing Panel which confirmed the findings of fact, conclusions of law and recommendation of the Referee.

In late 1972, respondent and another attorney, Barry W. Agulnick, formed a law partnership with an office for general practice in Brooklyn. In 1981 or 1982, the firm moved to

Manhattan and, in 1983, the firm was awarded a two-year contract as general counsel for the New York Transit Police Benevolent Association. The contract was renewable every two years which coincided with union elections. The firm was later awarded a second separate contract to provide prepaid legal services for the union membership.

In late 1992, as the contracts were about to expire and new contracts were to be negotiated, respondent was approached by the union treasurer, who told him that if the firm wanted to be retained under the contracts for another two years, payments or kickbacks had to be made by the firm to the union's president, treasurer and first vice-president. Respondent testified at the hearing before the Referee that the treasurer made it quite clear that "if we did not give him the money that he demanded, that our services would be terminated for both the general counsel and the prepaid legal services". Respondent discussed the extortionate threat with Agulnick and they agreed to make the payments.

The firm began making the extortionate payments in late 1992 and paid the union officials approximately $150,000 over a two-year period in cash amounts of less than $10,000, in order to circumvent currency reporting requirements. The payments continued until December 1994 or January 1995, when respondent and Agulnick decided to stop. As a result, the firm was replaced and the union stopped paying the firm for the work already done under its contracts.

In June 1996, respondent was informed by the FBI that he and his partner were targets of its investigation into the activities of the union, including the payment of kickbacks to union members. Respondent and Agulnick then had several meetings with the United States Attorney and fully cooperated with that office. In January 1997, respondent and Agulnick entered into a written cooperation agreement with the United States Attorney, Southern District of New York, to assist in the investigation and prosecution of "specific targets", including the three individuals to whom the firm paid kickbacks.

As part of the agreement, respondent and Agulnick waived indictment and pleaded guilty, in January 1997, to conspiring to structure payments and to defraud the Internal Revenue Service (IRS). After pleading guilty, respondent's cooperation with law enforcement continued on a regular basis up to and including the trial of the union's president and others, culminating in guilty verdicts in January 1998.

Respondent has not practiced law since his suspension in October 1997, has been doing volunteer work, and has fully cooperated during the disciplinary process.

In recommending that respondent be suspended for two years, the Referee found that a substantial suspension was in order because respondent had engaged in a two-year kickback scheme and had personally profited from his misconduct. The Referee also took into account that the offense to which respondent pleaded guilty, conspiracy to defraud the IRS, constituted additional conduct which "was intended to hide the underlying criminal conduct", finding such conduct to be an aggravating circumstance.

The Referee also took into consideration respondent's mitigating evidence. This included character evidence, his remorse, his cooperation with the Committee, his cooperation with criminal prosecutors and his lack of disciplinary history. With regard to respondent's cooperation, however, the Referee noted that respondent had begun cooperating with the authorities only after he was informed that they knew about his criminal conduct and about two years after he and Agulnick had stopped paying the kickbacks. The Referee also rejected as mitigation respondent's claim that their agreement to the kickback scheme resulted from duress. The Referee noted that respondent's basic argument was that he and his partner continued the payments for two years because, in part, they felt financially pressured to do so, having hired additional staff and leased expensive office space to handle the union work, as well as their children's substantial school expenses. The Referee wrote, "As difficult as it might have been to deal with hard financial choices, this cannot be considered mitigation. Obviously, most attorneys who commit financial misconduct feel that they are in need of money. This cannot be deemed duress".

In confirming the Referee's recommendation as to sanction, the Panel indicated that it was "troubled by the conduct of the Respondent", but, applying what it believed to be the appropriate standard, was "constrained to confirm the Referee's sanction as we cannot find that the Decision '* * * could not have been reached under any fair interpretation of the evidence' ". It concluded: "The Panel strongly disapproves of Respondent's conduct and is not swayed by the claims of economic duress as a mitigating factor. Nonetheless we are persuaded by the decisions cited herein. Therefore considering that the instant offense represents the Respondent's sole contact with the criminal and Disciplinary machinery, we recommend that the two-

year suspension be retroactive and be co-terminous with the Respondent's Federal probation. Additionally, Respondent is 57 years old. Were the sanction not retroactive, it would essentially mean that Respondent would be at least 60 before he could resume the practice of law".

Finally, since respondent would be eligible for reinstatement in December of this year and given the recent nature of the hearings in this matter, the Panel recommended that judicial economy would be best served by the reinstatement of respondent pursuant to section 603.14 of the Rules of this Court (22 NYCRR 603.14) without referring the matter to the Committee.

In support of its present motion, the Committee urges that a retroactive two-year suspension is appropriate in this case in that while a substantial suspension is most certainly warranted for this two-year kickback scheme from which the respondents profited, the mitigating factors are quite compelling. Respondent joins in the Committee's motion.

While we agree that respondent's conduct cannot be condoned and is to be deplored, as the Panel found: "Respondent presented various types of mitigation. First and foremost, respondent was remorseful. Remorse is extremely important because it reflects that the lawyer recognizes he did something wrong and suggests he will not do it again. Respondent was also cooperative with the Committee which is another mitigating factor. Additionally respondent presented character witnesses who testified favorably about respondent and respondent has no disciplinary history".

Accordingly, in light of the foregoing, the petition should be granted, the Hearing Panel's findings of fact and conclusions of law and its recommended sanction confirmed and respondent suspended from the practice of law for a period of two years retroactive to October 16, 1997, the date of his interim suspension, and until completion of his Federal probation, which we have been advised was successfully completed as of December 8, 1999. Under the circumstances, respondent should be reinstated immediately.

ELLERIN, P. J., WILLIAMS, MAZZARELLI, TOM and ANDRIAS, JJ., concur.

Motion granted, respondent suspended from the practice of law in the State of New York for a period of two years retroac-

tive to October 16, 1997, as indicated; and respondent reinstated as attorney and counselor-at-law in the State of New York, effective immediately.