[720 NYS2d 107]

In the Matter of NATHANIEL K. CHARNY (Admitted as NATHANIEL KIRES CHARNY), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 25, 2001

APPEARANCES OF COUNSEL

*La Trisha A. Wilson* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Sarah Diane McShea*, attorney, for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Nathaniel K. Charny was admitted to the practice of law in the State of New York by the Second Judicial Department on November 3, 1993 as Nathaniel Kires Charny. Respondent was also admitted to the New Jersey Bar in 1992. At all times relevant to the instant proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

On or about October 1, 1998, respondent pleaded guilty to an information filed in the United States District Court for the Southern District of New York to one count of conspiracy to defraud the United States (via making false statements) in violation of 18 USC § 371, a felony under the United States Code. The information alleged that respondent, a former associate at Cohen, Weiss & Simon, which represented Ronald Carey in his 1996 bid for re-election as president of the International Brotherhood of Teamsters, had lied about the legitimacy of several contributions to that campaign to a court-appointed election officer who was investigating illegal fund-raising activity.

By order and decision dated April 15, 1999 (257 AD2d 18), this Court granted the petition of the Departmental Disciplinary Committee, finding that the crime of which respondent had been convicted was a "serious crime" as defined by Judiciary Law § 90 (4) (d) and 22 NYCRR 603.12 (b), suspending respondent on an interim basis, and appointing a Referee to conduct a hearing within 90 days from the date of respondent's sentencing in Federal court. Respondent did not oppose this petition or his interim suspension but did request that the mitigation hearing be held as soon as possible after sentencing and, in any event, no later than 60 days thereafter. Respondent was similarly suspended by the New Jersey Supreme Court on May 17, 1999.

On April 6, 2000, the Honorable Thomas P. Griesa sentenced respondent to time served and imposed a $500 fine and a $100 special assessment. In accordance with this Court's order, the Referee scheduled a mitigation hearing for May 11, 2000.

Thereafter, by an expedited motion dated April 20, 2000, respondent moved for an order: (1) revising this Court's April 15, 1999 order by directly referring the matter to a Hearing Panel in lieu of a Referee; (2) referring this matter to a Committee Hearing Panel for an expedited hearing, pursuant to section 603.12 (a), as amended April 1, 2000; or (3) in the alternative, imposing a short suspension retroactive to April 15, 1999, the date of his interim suspension by this Court, and reinstating him forthwith to the practice of law. By order dated May 4, 2000, this Court granted respondent's motion only to the extent of referring this matter to a Hearing Panel to conduct a hearing within 90 days from respondent's sentence and to issue a report and recommendation as to the appropriate sanction.

On June 5, 2000, a hearing was held before a Hearing Panel. In a report dated August 23, 2000, the Panel recommended that respondent be suspended for two years retroactive to April 15, 1999, the date of respondent's interim suspension in New York. At the hearing, the Panel was informed that the Committee on Grievances for the United States District Court for the Southern District had issued an order on May 30, 2000 that imposed a two-year suspension on respondent retroactive to September 22, 1999, the date of his interim suspension before that court.

The underlying facts of respondent's crime are undisputed. Following a judicial clerkship, as a second-year associate at Cohen, Weiss & Simon, respondent was assigned to work with one of his firm's partners on the re-election campaign of Ronald Carey as president of the Teamster's Union. In late 1996, respondent, as counsel to a special fund-raising entity, was responsible for "vetting" the backgrounds of potential, non-teamsters contributors to ensure the legitimacy of their contributions. During this time, respondent spoke with 12 potential contributors, or someone acting on their behalf, rejecting five and accepting seven as contributors.

In early 1997, after Carey was re-elected, a Federal election officer began investigating numerous allegations of improprieties with respect to contributions to the Carey campaign, including the seven contributions which the 31-year-old respondent had vetted. In mid-February, respondent drafted and submitted to the election officer a signed declaration from a contributor, stating that she had directed her spouse to sign the contribution check on her behalf. Respondent added a sentence to the effect that she had spoken to him personally, which he knew was not true. Similarly, on February 20th, at

the direction of the election officer, respondent submitted a signed statement to her, outlining the steps he had taken to investigate the seven contributions. In that statement, respondent falsely stated that he had personally spoken to all seven contributors at the time of their respective contributions when, in fact, he had only talked to five of them and had spoken to the spouses of the other two.

On March 20, 1997, respondent confessed his misconduct to his law firm and asked permission to correct his misstatements before they were relied upon by the election officer. The next day, respondent was forced to resign from the firm and, within days, he began cooperating with the Federal election officer and the United States Attorney's office in the investigation into campaign irregularities. After 18 months of such cooperation, respondent entered his guilty plea in Federal court in October 1998.

During the course of the hearing, respondent testified that his "stupid" misconduct, for which he was "deeply sorry," resulted from overwork and his eagerness to appear competent and efficient. He stated that, during this period, he was relatively unsupervised because the partner in charge was out on maternity leave and the firm did not provide a direct substitute. Respondent also noted that he spent one night a week for four years as a *pro bono* legal volunteer with the Workers Defense League and that for four years he served as an adjunct professor with the Queens College Labor Resource Center, teaching returning students as part of their graduate or undergraduate studies.

Respondent relied on positive comments by the sentencing Judge (Griesa, J.), who noted his belief that respondent's status as a lawyer in good standing should be reinstated; that respondent's misconduct was a "lapse" and his "degree of culpability [was] very modest"; and that respondent had suffered enough and any continued disability of his legal career was unwarranted, stating that "anything I can do further to assist him getting back into the practice of law I would be glad to do." Finally, respondent referred to his character evidence, which attested to his good reputation in the legal community and to the aberrational nature of his misconduct.

In recommending a suspension retroactive to April 15, 1999, the date of respondent's interim suspension, the Hearing Panel concluded that retroactivity was warranted because respondent's wrongdoing was not especially egregious, nor was it part of a long-standing pattern of disregard of the law. The Panel

further noted that respondent had not practiced law in violation of his initial suspension (*see*, *Matter of Barnes*, 241 AD2d 13).

The Committee's recommendation of a two-year suspension took into account the mitigating evidence, i.e., respondent's minor role in the criminal activity, lack of a disciplinary record, cooperation with the Committee and the United States Attorney's office, remorse and contrition, efforts to correct his false statements, and respondent's youth and relative inexperience. However, the Panel also considered respondent's conviction to be "serious" in that he was fully aware his misstatements would be relied upon yet waited approximately five weeks before admitting to his misconduct. From this, the Panel inferred that respondent's actions "were the result of fear of being caught" as a result of questions raised by the election officer. The Panel further found that respondent's conduct was not an isolated incident insofar as he submitted false written statements on separate occasions. In view of the two-year suspension imposed by the Southern District, the Panel rejected respondent's request that he be automatically reinstated by this Court at the conclusion of the suspension.

The Committee now moves for an order pursuant to 22 NYCRR 605.15 (e) (1), confirming the Hearing Panel's report recommending that respondent be suspended from the practice of law for a period of two years retroactive to April 15, 1999, the date of his interim suspension. By cross motion, respondent seeks an order: (1) disaffirming the Hearing Panel's recommendation of a two-year suspension; (2) suspending respondent for 18 months, effective as of April 15, 1999; and (3) reinstating him to the practice of law without further formal proceedings.

In support of his cross motion, respondent takes issue solely with the length of the recommended sanction. He argues, *inter alia*, that by the time this Court determines the Committee's motion and this cross motion, he will have been suspended for nearly two years; he did not lie for personal financial gain; he concededly made a serious error in judgment; he attempted to rectify his misconduct so that the Federal election officer would not rely upon it; he has taken full responsibility for his transgressions; and he does not pose a threat to the public. In addition, respondent points to the recent decision from the New Jersey Supreme Court dated November 16, 2000 that imposed an 18-month suspension, as recommended by the New Jersey Disciplinary Review Board, effective the date of his

interim suspension (May 17, 1999), which made him eligible for reinstatement in New Jersey as of November 17, 2000.

As the Hearing Panel noted, although there are many "serious crime" cases within this Department concerning violations of 18 USC § 371, there are no cases directly on point. Nonetheless, a review of several decisions is instructive. In *Matter of Nasser* (231 AD2d 247), this Court imposed a retroactive six-month suspension upon a young lawyer convicted of making false statements on a HUD-1 form in connection with a bank loan. Like respondent at bar, the attorney accepted full responsibility for his actions, expressed genuine remorse, cooperated with law enforcement authorities, and suffered personally. Notably, in *Nasser (supra)*, since the six-month suspension had already expired, this Court directed the attorney's immediate reinstatement without any further proceedings *(see also, Matter of Levine*, 226 AD2d 39). In *Matter of Agulnick* (263 AD2d 239) and *Matter of Gogel* (263 AD2d 222), this Court imposed identical, retroactive two-year suspensions on law partners who were involved in a two-year kickback scheme to union officials, in which they cooperated with the government but also profited personally.

Respondent further asserts that the Court should decline to follow the Southern District's ruling because this Court has before it a fuller account of respondent's misconduct and the mitigating circumstances. While respondent admits that the Southern District Court has a special interest because his misconduct involved that court's appointment of the election officer, contrary to the Hearing Panel's statement, respondent's transgression was not "federal in nature" and, the Panel does not necessarily have to impose the same sanction as that imposed by the Federal court *(see, Matter of Prosperi*, 263 AD2d 282).

Respondent's request for automatic reinstatement without further proceedings was specifically addressed and rejected by the Hearing Panel. 22 NYCRR 603.14 allows for automatic reinstatement for suspensions of six months or less upon the appropriate application to the Court. However, this Court has expressly granted automatic reinstatements where the respondent's suspension expired by the time the case was decided by the Appellate Division *(see, Matter of Nasser, supra)* or where the time period remaining in the suspension was short *(i.e.,* less than six months) and no other issue remained *(see, Matter of Novak*, 200 AD2d 66). Noting that its recommended sanction would be in effect until April 15, 2001, the Panel concluded

that respondent must address his misconduct before the issue of reinstatement is even examined, and "any attempt to diminish his misconduct would not result in a favorable recommendation for reinstatement."

While it cannot be said that the Panel's recommended sanction is unreasonable, there is substantial evidence in mitigation. Respondent was an inexperienced attorney shouldered with significant responsibility. While the Panel is correct that he made more than one false statement to an election officer, his misconduct, which did not involve financial gain, was limited in time to approximately six weeks and, almost immediately thereafter, respondent extensively and successfully cooperated with the authorities. Not only did the United States Attorney's office praise respondent's cooperation but, when the sentencing Judge imposed a sentence of "time served," it also made a plea for disciplinary leniency. Furthermore, respondent's cooperation extended to this disciplinary proceeding, in which he consented to an interim suspension and repeatedly expressed remorse for his misconduct.

Accordingly, the motion should be granted and the Hearing Panel's findings and recommended sanction confirmed to the extent that respondent is suspended from the practice of law for a period of two years retroactive to April 15, 1999. Under the circumstances, the cross motion should be granted to the extent that respondent should be reinstated immediately upon conclusion of the period of suspension.

WILLIAMS, J. P., MAZZARELLI, ELLERIN, RUBIN and SAXE, JJ., concur.

Motion and cross motion granted to the extent of suspending respondent from the practice of law for a period of two years, retroactive to April 15, 1999, and directing that respondent be reinstated to the practice of law in the State of New York on April 15, 2001, without further proceedings. Motion and cross motion otherwise denied.