[760 NYS2d 5]

In the Matter of CHARLA R. BIKMAN (Admitted as CHARLA RUTH BIKMAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 3, 2003

**APPEARANCES OF COUNSEL**

*James T. Shed* of counsel. (*Thomas J. Cahill*, attorney), for petitioner.

*Charla R. Bikman*, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

Respondent Charla R. Bikman was admitted to the practice of law in the State of New York by the First Judicial Department on July 7, 1980, under the name Charla Ruth Bikman, and at all times relevant to these proceedings maintained an office for the practice of law in this Department.

The Departmental Disciplinary Committee now seeks an order confirming the determination of a Committee Hearing Panel that respondent violated Code of Professional Responsibility DR 1-102 (a) (4) (conduct involving dishonesty, fraud, deceit or misrepresentation) and (7) (any other conduct that adversely reflects on the lawyer's fitness as a lawyer) (22 NYCRR 1200.3) and imposing a suspension of no less than 18 months (22 NYCRR 603.4 [d]; 605.15 [e] [2]).

Respondent was charged with committing misconduct, in violation of the above-cited Disciplinary Rules, in connection with the occupation of a rent-regulated apartment. The statement of charges alleged that respondent defrauded the owner of the apartment by occupying it for two years after the death of the tenant of record, respondent's sister, without disclosing that death to the owner, and submitting rent checks bearing her sister's printed name only and what purported to be her deceased sister's signature.

A hearing was held before a Referee, who found that the evidence fully sustained the charges and recommended that respondent be suspended from the practice of law for one year. The Referee found that there was no dispute as to the facts. Respondent's sister, Minda Bikman, was the sole tenant of record of the Soho loft with a monthly rent of $646.71. After she died on February 19, 1997, of a terminal illness, respondent occupied the loft and each month sent the owner a check for $646.71 drawn on a joint-survivorship account in the names of herself and her sister, which the sisters opened two months before Minda Bikman died. Respondent never advised the owner of her sister's death. The rent checks bear the printed address of the loft and one printed name, Minda Bikman, and were purportedly signed by Minda Bikman. The owner learned of Minda Bikman's death in January 1999 and commenced eviction proceedings against respondent, who ultimately vacated the loft at the end of July 2001.

The Referee found that respondent's argument that the Disciplinary Rules apply only to lawyers' dealings with clients,

and not to their dealings with the rest of society, itself reflected adversely on her fitness to practice law, and he found that respondent manifested neither contrition nor any real understanding of her misconduct. However, he rejected the Committee's recommendation of a three-year suspension, in view of respondent's age and the fact that she is a solo practitioner, and considering her previously unblemished career of 22 years for the most part representing the poor and unprotected as 18-B counsel and otherwise, and recommended a one-year suspension.

A Committee Hearing Panel sustained both charges and recommended a suspension of 18 months. The Hearing Panel found that respondent "orchestrated a scheme to deceive the owner to believe that her sister was alive and residing in the loft" so that she could use the loft as her residence. She also listed the loft as her business address with the Office of Court Administration. The Hearing Panel noted that throughout the proceeding respondent refused to admit that she did anything legally, morally or ethically wrong. Moreover, respondent refused to cooperate with the Committee and in fact hindered the Committee's investigation, by giving evasive answers to the charges, refusing to comply with and indeed moving to quash one of the subpoenas issued by the Committee, invoking her Fifth Amendment rights during a deposition, commencing a libel action against the Housing Court Judge who had ruled against her, filing a written complaint against the Judge with his Supervising Judge, and making repeated ad hominem attacks against the owner of the loft, thus demonstrating her "total disdain" for the proceeding. The Panel concluded that, while the Committee's recommended suspension of three years was excessive, the Referee's recommended suspension of one year was insufficient and recommended a suspension of 18 months.

In her cross motion for an order disaffirming the Hearing Panel's report and dismissing the charges or, in the alternative, imposing a private sanction, respondent argues that neither the Legislature, in enacting Judiciary Law § 90, nor the Court of Appeals has granted the Committee "an unfettered license to intervene in an attorney's private life." In support of her argument, respondent relies on *Matter of Rowe* (80 NY2d 336, 342 [1992], *cert denied sub nom. Rowe v Joint Bar Assn. Grievance Comm. for Second & Eleventh Jud. Dists.*, 508 US 928 [1993], quoting *Matter of Rosenbluth*, 36 AD2d 383, 384 [1971] [the Disciplinary Rules cannot be used to sanction an

attorney for "engaging in endeavors which he could have undertaken had he never been admitted to the Bar in the first place"]). She asserts that the conduct at issue in this proceeding involves neither the practice of law nor the fiduciary relationship between attorney and client and is private conduct that does not violate the law. Respondent argues that her conduct was lawful in that the rent checks she submitted were authorized and paid by the bank upon presentment; that a signatory of a joint-survivorship account is not required to put her name on a check drawn from that account; that there is no requirement in the Loft Law, the Loft Board regulations, any other civil or criminal statute or Minda Bikman's lease that an occupant of rent-regulated premises notify the landlord when the tenant of record dies or vacates the premises; and that her sister's death was a matter of public record.

Respondent's argument is unpersuasive. As the Referee observed, "[E]ven if respondent did not quite manage to commit criminal or common-law fraud, she surely was dishonest, she was deceitful and she did misrepresent" (*see* DR 1-102 [a] [4]). Citing to the Code of Professional Responsibility, the Court of Appeals instructed in *Matter of Rowe* (*supra*, 80 NY2d at 340) that lawyers must be held to the "highest standards of ethical conduct" because the legal profession needs the respect and confidence of society if it is to play its critical role in sustaining the rule of law and the concept of justice upon which our free and democratic society depends. A lawyer's unethical conduct, even when it occurs outside the practice of law, is a proper concern of the Disciplinary Committee because it tends to reflect adversely on the legal profession as a whole (*see id.*). This Court also has made it clear that professional standards require the highest degree of ethical conduct both in the practice of law and outside it (*Matter of Wong*, 275 AD2d 1, 6 [2000] ["courts possess the power to discipline attorneys for conduct that is both in and out of their profession so as to ensure the public's right to representation by attorneys who are worthy of trust"]). This Court has censured attorneys for professional misconduct in matters having nothing to do with the practice of law (*see Matter of Norwood*, 80 AD2d 278, 280 [1981] [making misrepresentations on a resume and in sworn answers to a questionnaire submitted in a job application]; *Matter of Kaufman*, 29 AD2d 298 [1968] [issuing worthless checks]; *Matter of Buttles*, 23 AD2d 446 [1965] [same]). In *Kaufman*, the Court warned that "if [a lawyer who engages in business] wishes to remain a member of the Bar he must conduct

himself in that business in accordance with the standards imposed on members of the Bar" (*id.* at 299). The Court observed that, although the attorney's conduct did not involve the attorney-client relationship, it did reflect on "the reputation of the Bar" (*id.*).

With respect to an appropriate sanction, this Court rejected the Hearing Panel's recommendation of suspension in *Norwood* (*supra*) and found that censure was the fitting penalty in view of certain mitigating circumstances that demonstrated that respondent's conduct, "although certainly not excusable, has its roots in more than mere self-aggrandizement" (*id.* at 280). The Court "inclined toward leniency" in *Buttles* (*supra* at 447) because the attorney, who had a previously unblemished record of 32 years at the bar, admitted the charge, admitted that he conducted himself "lamentably" (*id.* at 446), threw himself upon the leniency of the Court, and made good on the worthless checks. In this proceeding, in distinction, respondent's cross motion demonstrates that, as both the Referee and the Hearing Panel found, she does not admit to doing anything legally, morally or ethically wrong. Morever, the record supports the Panel's finding that respondent's misconduct was aggravated by her failure to cooperate with and efforts to impede the Committee's investigation. Balancing these factors against the above-cited mitigating circumstances, we find that an 18-month suspension is a fitting penalty.

Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law for a period of 18 months. Respondent's cross motion should be denied.

NARDELLI, J.P., SULLIVAN, ROSENBERGER, ELLERIN and FRIEDMAN, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of 18 months, effective May 5, 2003, and until further order of this Court, as indicated.