[915 NYS2d 22]

In the Matter of ALBERT RUDGAYZER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 9, 2010

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Orlando Reyes* of counsel), for petitioner.

*Law Office of Michael S. Ross* (*Pery D. Krinsky* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Albert Rudgayzer was admitted to the practice of law in the State of New York by the Second Judicial Department on April 30, 1997. At all times relevant to this proceeding he has maintained an office for the practice of law in the First Judicial Department.

On August 19, 2008, respondent pleaded guilty to offering a false instrument for filing in the second degree, in violation of Penal Law § 175.30, a class A misdemeanor, and was sentenced to a one-year conditional discharge and ordered to pay about $120,000 in restitution and fines. In his plea agreement and at his plea allocution, respondent admitted that he knowingly caused to be filed with the Office of Court Administration (OCA) a closing statement with false information by indicating that his firm paid $500 for a medical narrative in a client matter when the payment was "also an inducement paid to [the clinic] to refer additional accident vehicle clients to [him]" and constituted "something of value for the solicitation of clients."

Respondent promptly reported his conviction to the Disciplinary Committee and joined in the Committee's petition for a determination that he was convicted of a "serious crime." By unpublished order entered September 28, 2009, we deemed respondent's misdemeanor conviction a "serious crime" pursuant to Judiciary Law § 90 (4) (d) and directed a Hearing Panel to conduct a hearing as to the appropriate sanction.

The Hearing Panel conducted hearings on December 9 and 16, 2009, at which time respondent testified on his own behalf as to the circumstances that led to his conviction. Respondent's three character witnesses testified as to his reputation for honesty and his expression of remorse. Respondent also submitted 26 letters and two affidavits attesting to his good character.

In 1998, respondent began what became a high-volume practice focusing on soft-tissue motor vehicle accident cases. Between June 2003 and January 2005, respondent accepted about 150 referrals from three medical clinics (the clinics), which constituted approximately 15% of his practice. Respondent purchased narrative medical report packages for $500 to $1,000 in each case the clinics referred to him. In addition, he testified that he agreed to represent 10 to 15 clients from the clinics that

he did not want to represent and paid for medical report package fees for those cases in order to keep referrals flowing. As a result of his arrest and conviction, respondent's law firm dissolved. He is currently a solo practitioner with reduced earnings, handles only a couple of new cases a year and makes per diem appearances for other attorneys, with a nearly 75% decrease in income from $500,000 per year to $130,000. Respondent expressed remorse and testified that he has since learned the importance of credibility and has been diligent in observing the ethical rules.

In post-hearing submissions, the Committee and respondent requested a two-year suspension and censure, respectively. In March 2010, the Panel issued its determination, recommending a two-month suspension. The Panel found the following mitigating factors: the abundant evidence of respondent's good character; his contrition; and that he had suffered financially and professionally as a consequence of his misconduct. In aggravation, the Panel found that respondent's $100 cash payment to a medical clinic manager was "somewhat troubling." The Panel stated that even if, as respondent claimed, the money was a contribution for a clinic employee's birthday party, "it was still putting cash in the hands of a person who referred clients to [r]espondent, and as such was improper." The Panel did not agree with the Committee as to the existence of additional aggravating factors. With regard to the 10 to 15 clients that respondent did not want but accepted, the Panel found there was "no evidence that [r]espondent represented those clients less than satisfactorily or that . . . anyone . . . influenced any decision made by [r]espondent in the course of the representation."

The Committee now moves to disaffirm the Hearing Panel's recommendation and to impose a suspension of two years, but in no case less than one year. Respondent cross-moves to affirm the Panel's recommendation of a two-month suspension and to deny the Committee's motion.

As this proceeding involved a "serious crime," the only issue herein is whether a harsher sanction than the two-month suspension recommended by the Hearing Panel is appropriate. In this regard, we find that the Panel's recommendation is in accord with this Court's own precedent (*see e.g. Matter of Meyerson*, 46 AD3d 141 [2007] [public censure for soliciting clients from a clinic by paying $800 for narrative reports of 11 referred clients over a five-month period and obtaining

free narrative reports for the two clients he referred to the clinic, where the attorney had no prior disciplinary history, took responsibility for his actions, expressed remorse and did not think he was harming his clients by paying for reports needed to settle their claims]; *Matter of Ehrlich*, 252 AD2d 73 [1998] [three-month suspension for cash payments made to a hospital employee in connection with 30 client referrals where attorney did not self-report his criminal conviction]; *Matter of Santalone*, 301 AD2d 265 [2002] [three-month suspension imposed on attorney caught making a $1,000 cash payment for a client referral during a sting operation where no prior disciplinary record but in the absence of genuine remorse]; *Matter of Setareh*, 264 AD2d 146 [2000] [public censure imposed on relatively inexperienced attorney who twice paid a fee for the referral of clients and who had a drug addiction but stopped using narcotics and entered a drug treatment program after his arrest, where there was no prior disciplinary history and he was unwilling to take a case that lacked merit]; *Matter of Hankin*, 296 AD2d 238 [2002] [public censure imposed on attorney who paid an undercover investigator $375 for a client referral with mitigating factors including public and pro bono service, cooperation, and remorse]).

As recognized by the Panel, the misconduct here is more serious than in *Meyerson*, and less egregious than in *Ehrlich*, with the sole aggravating factor of a one-time $100 cash payment and several mitigating factors present, including the apparent lack of prior discipline (which was not noted by the Panel), respondent's expression of remorse and substantial character evidence.

While respondent admits that his acceptance of the 10 to 15 cases that he would have preferred not to handle was akin to a bribe and made in order to induce future referrals and thus constituted solicitation, there was no evidence that respondent's representation of those individuals was in any way compromised. Further, given the reduction in respondent's case load and his remorse and contrition, there is no reason to believe that he poses a future threat to the public. Additionally, while respondent's $100 cash payment to a medical clinic manager is troubling, there is no evidence that the conduct was ever repeated and the one-time payment is considerably less than the repeated conduct which warranted only a three-month suspension in *Ehrlich* (252 AD2d at 75).

We also find that the payment for medical narratives in the subject 10 to 15 cases is less egregious than the cash payments Ehrlich paid for referrals since the "market price" was paid for the narratives, those documents are useful in prosecuting soft-tissue motor vehicle accident claims, and they represent work actually performed by the clinics in preparing the reports. As recognized by the Hearing Panel in *Meyerson*, this type of "quid pro quo arrangement" is "qualitatively less pernicious than the classic cash-for-client solicitations depicted in *Ehrlich, Setareh, Hankin* and *Santalone*" (46 AD3d at 145).

*Matter of Becker* (24 AD3d 32, 34-35 [2005]), relied upon by the Committee for the imposition of a longer sanction, states that "[g]enerally misconduct involving . . . filing false instruments . . . has resulted in sanctions ranging from a short suspension to disbarment depending on the repetitiveness of the misconduct and the desire for personal profit." In *Becker*, the attorney was suspended for three months for settling a case and accepting a settlement check on behalf of a deceased client, altering settlement documents, having them falsely notarized and filing a false closing statement with OCA, conduct more egregious than present here.

Likewise, the Committee's reliance on *Matter of Hanna* (282 AD2d 99 [2001]) is misplaced as the case involves more egregious conduct. There, the attorney was suspended for three years based on his federal conviction for filing 10 false immigration applications using names of fictitious spouses where the attorney falsely certified that he had seen original birth and marriage certificates. The other cases relied upon by the Committee are similarly distinguishable. In *Matter of Nasser* (231 AD2d 247 [1997]), an attorney was suspended for six months for knowingly making false statements in filings with the U.S. Department of Housing and Urban Development in order to allow homeowners to refinance. In *Matter of Adler* (302 AD2d 78 [2003]), the attorney was suspended for one year based on his conviction of offering a false instrument for filing in the second degree in connection with his forgery and false notarization of a deed and related tax documents.

Accordingly, the Committee's motion should be denied, respondent's cross motion should be granted, the findings of fact and conclusions of law of the Hearing Panel should be confirmed, and respondent should be suspended from the

practice of law in the State of New York for a period of two months.

ANDRIAS, J.P., CATTERSON, RENWICK, DEGRASSE and ABDUS-SALAAM, JJ., concur.