[940 NYS2d 30]

In the Matter of ALEXANDER J. GUREVICH (Admitted as ALEXANDER GUREVICH), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 23, 2012

### APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Jeremy S. Garber* of counsel), for petitioner.

*The Law Offices of Michael S. Ross, Esq.* (*Michael S. Ross* of counsel) and *Silverman, Sclar, Shin & Byrne, PLLC* (*Peter R. Silverman* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Alexander J. Gurevich was admitted to the practice of law in the State of New York by the Second Judicial Department on December 14, 1998. At all times relevant to this proceeding, he maintained an office for the practice of law within the First Judicial Department.

In June 2009, the Departmental Disciplinary Committee (the Committee) filed 10 charges against respondent alleging that he committed professional misconduct in connection with a commercial real estate transaction and testified falsely at his sworn deposition before the Committee. In his answer, respondent admitted many of the factual allegations, but denied all charges.

In March 2010, the Referee, after a hearing, sustained charges 1 through 6 and 10 in their entirety. Charges 7 and 8 were sustained in part and charge 9 was withdrawn by the Committee. In July 2010, the Referee recommended a one-year suspension. During the proceedings before the Hearing Panel, the Committee withdrew charge 2. In December 2010, the Hearing Panel issued its report in which it affirmed the Referee's liability findings as to the remaining charges, and recommended that the proposed suspension be increased to 18 months.

The Committee now moves for an order confirming the findings of the Referee and Hearing Panel sustaining charges 1, 3, 4, 5, 6 and 10, in full, and charges 7 and 8, in part, and confirming the sanction recommendation of the Hearing Panel to suspend respondent for 18 months. Respondent cross-moves to the extent of seeking an order disaffirming the sanction recommendation of both the Referee and the Hearing Panel and instead imposing a public censure.

The charges arise out of the following facts. In 2003, respondent formed a group of investors to purchase a retail mall outlet from Designer Outlet Gallery (DOG) for $13 million. Respondent was to cobroker the sale with DOG's managing member and they created Castle Development, LLC (Castle) to receive the anticipated 6% brokerage commission ($780,000), which DOG was to direct the buyer to pay from the sales proceeds.

The contract was assigned to Secaucus Outlet Center, LLC (SOC), formed by respondent and his fellow investors. SOC sought $10 million in financing from UBS Real Estate Investment, Inc. (UBS). UBS later reduced the loan amount to $8.2 million.

To cover the financing gap, respondent arranged for a $750,000 loan from his clients Vitaly Tsimerman and Alla Bronshteyn, a husband and wife. Respondent advised the Tsimermans to seek independent counsel as his interests as a borrower might be adverse to theirs as a lender, but did not receive a written waiver of the conflict of interest involved in entering into a business transaction with a client. In November 2003, respondent prepared a promissory note and security agreement between SOC and the Tsimermans' company, Capital Resources Management LLC (CRM). The security agreement pledged all outstanding shares of SOC as collateral for the loan. In March 2005, the Tsimermans renewed the loan for another year.

To cover the remaining shortfall, respondent executed a promissory note between SOC, as borrower, and Castle, as lender, which provided that SOC would pay the $780,000 brokerage commission to Castle within one year of the closing and that monthly interest of $12,000 (12% per annum) would be paid to Castle. SOC's promissory note contained a provision stating that the Castle loan would be secured by a mortgage on the property. Respondent also made an interest-free loan to SOC in the amount of $250,000.

At the closing, respondent on behalf of SOC, executed a number of documents required by UBS which contained representations that respondent knew to be false. Particularly, despite his knowledge that SOC had incurred, or was about to incur $750,000 in indebtedness to the Tsimermans, $780,000 in indebtedness to Castle, and $250,000 in indebtedness to respondent, that the Tsimermans and Castle loans were to be secured by mortgages, and that he was owed $390,000, representing half of the deferred brokerage commission payable to Castle, respondent:

- represented in the mortgage that SOC had not incurred, and would not incur, any indebtedness, secured or unsecured, direct or indirect, absolute or contingent, including guarantees, other than the debt owed to UBS and that SOC would not, without UBS's prior consent, transfer, or permit the transfer of, an interest in the mortgaged property;

- represented in an amendment to the operating agreement of SOC that, for as long as UBS or its successors held a mortgage lien on the property, SOC would not incur, assume, or guaranty any other indebtedness other than that for trade payables or accrued expenses incurred in the ordinary course of business;

- certified in a certificate that there were no loans payable to any stockholder, officer, director, or member of any general or limited partner of SOC; and

- certified in the HUD-1 settlement statement that the brokerage commission had been paid at closing.

Respondent also testified falsely about the Castle loan at his December 2006 deposition before the Committee. It was not until a second deposition in March 2007, following production of the Castle promissory note, that respondent gave an accurate account of the brokerage commission. While respondent admitted that "mistakes were made," he failed to acknowledge that his so called "mistakes" were actually intentional, serious misrepresentations in loan documents and on the HUD-1 settlement statement.

In view of the foregoing, we confirm the findings of fact and conclusions of law as to respondent's liability. The findings that respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]), and which adversely reflected on his fitness as a lawyer, in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (charges 1, 3, 4, 5 and 6), engaged in conduct prejudicial to the administration of justice in violation of DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), as well as DR 1-102 (a) (4) and (7) (charge 10), and violated DR 5-104 (a) (3) (22 NYCRR 1200.23 [a] [3]) by virtue of his failure to obtain a written waiver of any inherent conflict from

the Tsimermans (charges 7 and 8, in part), are fully supported by the record.

With regard to the severity of the sanction to be imposed, given the aggravating factors in this case, and their weight as balanced against the mitigating factors, we find that a suspension for a period of 18 months is warranted. While this matter involves a single transaction, respondent made repeated, intentional misrepresentations in several legal documents. He then compounded this misconduct by giving false testimony at his sworn deposition before the Committee. His attempt to portray himself as an inexperienced real estate practitioner, along with his failure to acknowledge his misconduct and his lack of remorse, are aggravating factors which support the Hearing Panel's recommendation of an increased suspension of 18 months (see Matter of Cohen, 40 AD3d 61 [2007] [respondent suspended for two years for falsifying an Immigration and Naturalization Service filing by back dating it and for failing to acknowledge her misconduct or express remorse]; Matter of Bikman, 304 AD2d 162 [2003], lv denied 100 NY2d 506 [2003] [18-month suspension for respondent who presented rent checks with her deceased sister's name to keep possession of a rent controlled apartment, attempted to impede the Committee's investigation, and failed to acknowledge her misconduct or demonstrate remorse]; Matter of Harris, 139 AD2d 253 [1988] [two-year suspension imposed on respondent who, among other things, induced a long standing client to extend a $55,000 loan to another client to assist with a real estate development project, but failed to provide the lending client with material information]; compare Matter of Nasser, 231 AD2d 247 [1997] [retroactive six-month suspension for young lawyer convicted of making false statements on a HUD-1 form in connection with a bank loan, who accepted full responsibility for his actions, expressed genuine remorse, cooperated with law enforcement authorities, and suffered personally]).

Accordingly, the Committee's petition should be granted, the Hearing Panel's report confirmed, respondent is suspended from the practice of law for a period of 18 months and until further order of this Court, and the cross motion should be denied.

ANDRIAS, J.P., SAXE, RICHTER, MANZANET-DANIELS and ROMÁN, JJ., concur.

Respondent suspended as an attorney and counselor-at-law in the State of New York for a period of 18 months, effective 30

days from the date hereof and until further order of this Court. Cross motion denied.