[996 NYS2d 2]

In the Matter of Felix Nihamin, an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, October 21, 2014

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Orlando Reyes* of counsel), for petitioner.

*Hinshaw & Culbertson LLP* (*Philip Touitou* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Felix Nihamin was admitted to the practice of law in the State of New York by the Second Judicial Department on January 31, 1996. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

On May 18, 2012, respondent pleaded guilty in the Superior Court of New Jersey, Morris County, to one count of misapplication of entrusted property in the third degree, in violation of New Jersey Statutes Annotated § 2C:21-15. He admitted to participating in a mortgage fraud scheme, to the detriment of his lender clients, between 2005 and 2007 by, inter alia, misrepresenting the amounts paid to the sellers on HUD-1 closing statements in six real estate transactions. As a result of that plea, respondent had been sentenced to three years' probation along with restitution, a fine and other conditions.

By unpublished order entered May 10, 2013, this Court, upon the petition of the Departmental Disciplinary Committee (DDC), deemed the offense of which respondent was convicted to be a "serious crime" and referred the matter back to the DDC for a sanction hearing before a Hearing Panel (the Panel). A hearing took place on July 30, 2013. The DDC did not call any witnesses but introduced documentary evidence. Respondent testified on his own behalf, called three character witnesses, and introduced documentary evidence. Respondent testified that he concentrates his practice in the area of real estate law. Between 2002 and 2008, he represented lenders in approximately 100 real estate closings involving sale/leaseback agreements between buyers and sellers of properties. The transactions were arranged by so-called "mortgage solution" companies that would typically locate distressed properties and offer the owners the opportunity to remain in their homes through a sale/leaseback transaction with a "straw buyer." The straw buyer would qualify for a loan, purchase the property but would not take possession; the seller would remain in possession as a tenant with the opportunity to repurchase the property at a later date.

The mortgage solution company would pay the straw buyer approximately $1,000 to $1,500 for participating in the transaction; the mortgage solution company collected a fee; and respondent was paid a legal fee of approximately $1,500. Following closing, the mortgage solution company would then be responsible for collecting lease and mortgage payments.

With the exception of respondent's lender clients, all the parties to the transaction were aware of the true state of affairs. Respondent admittedly deceived the lenders by furnishing HUD-1 statements which falsely stated that the mortgage loan proceeds were remitted to the sellers, minus payoffs of existing mortgages and liens; in fact, he remitted the mortgage funds to the mortgage solution company or its principals. Respondent emphasized that he did not draft the sale/leaseback agreements which were prepared and executed outside of his presence, nor offer legal advice with respect thereto. At the time, respondent had believed that the mortgage solution companies were providing distressed homeowners with the means to remain in their homes. He testified that, other than his deception, he properly attended to the tasks of representing the lenders, including obtaining title reports; assuring that the lenders' liens took first priority; and overseeing the execution of loan-related documentation. Respondent stated that the sale/leaseback transactions accounted for only a small percentage of his practice, and he received only his standard fee. He acknowledged, however, that he did not cease working with the mortgage solution companies until he was contacted by the New Jersey Attorney General's Office as part its investigation. He also acknowledged that his desires to collect legal fees and obtain referrals from the mortgage solution companies were motivating factors for his becoming involved in the transactions at issue.

Respondent testified that he was "truly sorry" for his misconduct and explained that the proceedings resulting from his wrongdoing have had significant, adverse financial consequences for his law practice. He ceased doing business with mortgage solution companies and similar entities that engage in questionable practices. He was in full compliance with all terms of his probation, including making restitution.

In aggravation, the DDC introduced a prior letter of admonition respondent received in 2010 from the Supreme Court of New Jersey's Disciplinary Review Board (DRB) as a result of an overdraft on his IOLTA account. The DRB found that respondent negligently misappropriated escrow funds belonging to a

third person and commingled personal and client funds in his trust account, but that no client was harmed, and respondent promptly replenished the funds at issue and took steps to reform his record-keeping practices. An additional aggravating factor raised by the DDC was that respondent had used a nonattorney to handle some of the closings at issue. Respondent explained that he had been led to believe that the individual in question was an admitted attorney in New Jersey and New York, and he only learned this was not the case in late 2011 during the New Jersey Attorney General's investigation.

Both parties submitted posthearing memoranda. The DDC argued that respondent should be suspended for the duration of his criminal probation or for one year, whichever was longer, and that reinstatement be conditioned upon full satisfaction of the terms of his sentence, including payment of all restitution and fines. Respondent urged a sanction no greater than a public censure.

In its report dated September 27, 2013, the Panel recommended that respondent be suspended from the practice of law for three months, the length of the suspension recommended by the New Jersey DRB. The Panel found that, while respondent may not have acted with venal intent, he engaged in the conduct at issue in order to earn additional legal fees and to build a relationship with the principals of the mortgage solution companies, hoping for significant business referrals. It took cognizance of the several mitigating factors in respondent's conduct, and gave limited significance to the DDC case in aggravation, finding that the overdraft which was the subject of the New Jersey admonition was the result of respondent's bank not properly structuring his trust account, a matter which respondent was in the process of correcting at the time of the overdraft, and that the individual hired by respondent misrepresented his bar admission status to respondent. Notably, no charges were brought against respondent with respect to this issue, nor did the DDC emphasize it at the hearing. The Panel cited in particular the reasoning in *Matter of Nasser* (231 AD2d 247 [1st Dept 1997]), wherein we adopted the recommendation of the Hearing Panel of a six-month suspension that mirrored the six-month sanction given to the respondent by the disciplinary committee in Connecticut, where the respondent lived, worked, and committed the "serious crime."

The DDC moves this Court for an order, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 605.15

(e), confirming the Hearing Panel's findings of fact and conclusions of law and imposing whatever sanction this Court deems just and proper, although it argues for a suspension of at least three months. Respondent argues that this Court should impose no greater sanction than a public censure given that his probation supervision, imposed as part of the criminal sentence, has been terminated early, he has fully paid the fine imposed as part of his sentence and is currently making monthly payments toward the civil settlement with the New Jersey Attorney General's Office, and this amount essentially represents a disgorgement of the total legal fees he earned in connection with the sale/leaseback transactions.

The issue of sanction in matters such as the case at bar is very fact dependent. Sanctions for misconduct similar to that engaged in by respondent have ranged between public censure and suspensions of various lengths depending on mitigating and aggravating factors (*see e.g. Matter of Misiano*, 33 AD3d 254 [2d Dept 2006] [public censure for federal misdemeanor conviction for intentional false statements intended to defraud U.S. Department of Housing and Urban Development; mitigation included remorse, family health problems, lack of harm to client]; *Matter of Gurevich*, 94 AD3d 39 [1st Dept 2012] [18-month suspension for, inter alia, intentional misrepresentations in loan documents, including a HUD-1; aggravation included false testimony to DDC]).

Respondent is also admitted in New Jersey where, as a result of disciplinary proceedings in that jurisdiction, he has been suspended from the practice of law for three months effective as of July 17, 2014 (217 NJ 616, 92 AD3d 668 [2014]). While this proceeding was not brought as a reciprocal discipline case, great weight is to be afforded the sanction issued by the foreign jurisdiction in which the offending attorney lived and practiced at the time of the offense (*Nasser*, 231 AD2d at 249; *see also Matter of Maiorino*, 301 AD2d 53, 55 [1st Dept 2002]). Here, where respondent has been fully forthright and remorseful throughout the New Jersey criminal proceedings and both New York and New Jersey's disciplinary proceedings, respondent's probation supervision has already been terminated, and there are several mitigating factors, we find the Hearing Panel's recommendation of a three-month suspension strikes an appropriate balance.

Accordingly, the motion should be granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law and the recommended sanction, and suspending respon-

dent from the practice of law in the State of New York for a period of three months, effective 30 days from the date of this Court's order, and until further order of this Court.

FRIEDMAN, J.P., SWEENY, RENWICK, ANDRIAS and FEINMAN, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of three months, effective 30 days from the date hereof, and until further order of this Court.